UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES DISTRICT COURT
FILED
SEP 2 2 2016
MARY C. LOEWENGUTH, CLERK
WESTERN DISTRICT OF NY

CHRISTINA COSTA,

        Plaintiff,

    v.

SEARS HOME IMPROVEMENT PRODUCTS,
INC. and SEARS HOLDINGS CORPORATION,

        Defendants.

**DECISION AND ORDER**

6:12-CV-6235 EAW

This case involved a hotly-contested dispute as to whether the plaintiff, Christina Costa, was unlawfully retaliated against by her former employer in violation of Title VII. After discovery and dispositive motion practice, a jury trial commenced in October 2015. Before the jury rendered a final verdict, the parties resolved the underlying substantive aspect of Plaintiff's claim, but as in many of these cases, the sticking point with the settlement was the amount of attorneys' fees and costs that should be paid to Plaintiff's attorneys. The parties agreed to leave that issue for resolution by the Court, and what ensued was even further litigation between the parties. Plaintiff's counsel seeks a total of $785,652.75 in attorneys' fees, and $31,892.96 in costs and disbursements, all in the total amount of $817,545.71. Defendants oppose the application, arguing that at best, Plaintiff's counsel should recover only around $200,000.

For the reasons set forth below, the Court determines that Plaintiff's attorneys are entitled to recover $406,163.15 as the reasonable attorneys' fees incurred in pursuing this matter, and costs and disbursements of $20,174.76, for a total award of $426,337.91.

- 1 -

## FACTUAL AND PROCEDURAL BACKGROUND

On April 30, 2012, Plaintiff Christina Costa ("Plaintiff") commenced this action alleging unlawful retaliation against Defendants Sears Home Improvement Products, Inc., and Sears Holdings Corporation (collectively "Defendants") in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"). (Dkt. 1). Plaintiff alleged Defendants terminated her employment in retaliation for her participation in various protected activities. (*Id.*). When she commenced this litigation, Plaintiff was represented solely by the LaDuca Law Firm LLP. (*Id.*).

After Defendants filed an answer, an initial scheduling order was entered on August 9, 2012, requiring the completion of all discovery by September 20, 2013. (Dkt. 11). That scheduling order was amended on August 9, 2013, extending the fact discovery deadline to September 16, 2013, and leaving all other deadlines in place. (Dkt. 16).

On December 31, 2013, Defendants moved for summary judgment. (Dkt. 18). Shortly thereafter, Michael R. Law, Esq., of the law firm Phillips Lytle LLP, filed a notice of appearance as co-counsel on behalf of Plaintiff. (Dkt. 20). On February 17, 2014, Plaintiff filed papers in opposition to the summary judgment motion (Dkt. 22), and she also filed a motion for sanctions and a motion to compel (Dkt. 23).

At this point, the case was transferred to the undersigned. (Dkt. 25).

On March 21, 2014, Defendants filed papers in opposition to the sanctions motion and motion to compel (Dkt. 28; Dkt. 32; Dkt. 34), wherein they also requested the imposition of Rule 11 sanctions against Plaintiff. On that same date, Defendants filed reply papers in further support of their summary judgment motion. (Dkt. 29-30). On

April 11, 2014, Plaintiff filed reply papers in further support of her motion to compel and motion for sanctions. (Dkt. 37).

Oral argument on the pending motions was held before the undersigned on May 14, 2014. (Dkt. 38). Appearing on behalf of Plaintiff at that motion argument were Mr. Law and Mr. LaDuca, while Jacqueline Phipps Polito, Esq., and Pamela SC Reynolds, Esq., appeared from the Littler Mendelson, P.C. firm on behalf of Defendants. (*Id.*). The Court reserved decision after the oral argument, which lasted approximately one hour.

On December 15, 2014, the undersigned issued a Decision and Order denying all of the pending motions, including the summary judgment motion. (Dkt. 39). The Court referred the matter for mediation, which was unsuccessful (Dkt. 43-44), and at the same time scheduled a date for a jury trial. (Dkt. 42). That jury trial was subsequently adjourned due to the Court's conflicting criminal calendar, and a jury trial was scheduled to commence on October 16, 2015, with the final pretrial conference scheduled for October 5, 2015. (Dkt. 48-49).

Both parties filed numerous pretrial documents and motions in advance of the trial date. (*See, e.g.,* Dkt. 51-87). Among other issues raised were the following:

(1)   Plaintiff's motion *in limine* to preclude Defendants from offering evidence regarding the ultimate disposition of a prior discrimination complaint against Defendants by Plaintiff's former co-worker, Michelle Kielbasinski (Dkt. 56);

(2)   Plaintiff's motion *in limine* to preclude Defendants from offering evidence or testimony concerning Plaintiff's alleged tardiness (the reason presented by Defendants for terminating Plaintiff's employment) prior to January 28, 2010 (*id.*);

(3)   Plaintiff's motion *in limine* seeking to preclude any mention to the jury of compensatory and punitive damages limitations (*id.*);

(4)   Plaintiff's motion *in limine* to preclude two emails (*id.*);

(5)   Defendants' motion *in limine* to exclude evidence of alleged discrimination or retaliation against Kielbasinski (Dkt. 60);

(6)   Defendants' motion *in limine* to exclude evidence of other lawsuits filed against Defendants (*id.*);

(7)   Defendants' motion *in limine* to exclude evidence of alleged disparate treatment of Plaintiff's co-worker, Maria Paris (Dkt. 62);

(8)   Defendants' motion *in limine* to exclude all stray remarks or other hearsay testimony (Dkt. 63);

(9)   Defendants' motion *in limine* to exclude and/or limit evidence of damages (Dkt. 64);

(10)   Defendants' motion *in limine* to exclude all evidentiary references that Plaintiff's performance plan for improvement was retaliatory and to limit Plaintiff to the factual allegations contained in her complaint (Dkt. 66);

(11)   Defendants' motion *in limine* to exclude lay witness testimony regarding Plaintiff's alleged emotional injuries (Dkt. 72);

(12)   Plaintiff's motion to submit questions concerning front and back pay to the jury for advisory findings pursuant to Fed. R. Civ. P. 39(c)(1) (Dkt. 76); and,

(13)   Defendants' motion to quash a subpoena issued by Plaintiff (Dkt. 95).

A jury was selected on October 16, 2015, and the trial commenced on October 19, 2015, with opening statements and the presentation of witnesses.  Plaintiff called a total of ten witnesses, and she completed her proof on October 21, 2015.  Defendants moved for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50 at the

close of Plaintiff's proof (Dkt. 107), and the Court reserved decision.  Between October

21 and 22, 2015, Defendants presented a total of five witnesses (two of whom had

already been called by Plaintiff).  On October 23, 2015, closing arguments were made

and the jury commenced its deliberations.  The jury deliberations continued on October

26, 2015.  Before the jury reached a final verdict, the Court worked with the parties to

settle the case, which resulted in a confidential settlement.  The parties were not able to

resolve the issue as to the amount of attorneys' fees recoverable by Plaintiff as the

prevailing party,[1] and therefore it was agreed that the Court would resolve that issue

through supplemental submissions.

Pursuant to the schedule established by the Court, Plaintiff's counsel submitted its

application for attorneys' fees on November 30, 2015.  (Dkt. 123; Dkt. 125).[2]  On

December 30, 2015, Defendants submitted their papers in opposition to the fee

application.  (Dkt. 126).  Then, on January 14, 2016, Plaintiff moved to re-open discovery

so that Plaintiff could obtain and review information regarding Defendants' attorneys'

fees.  (Dkt. 129).  The Court stayed any further briefing on the attorney fee application,

---

[1]     Defendants have not opposed Plaintiff's fee application on the grounds that she
was not the prevailing party, and any such opposition would be without merit. *See, e.g.,*
*Lyte v. Sara Lee Corp.*, 950 F.2d 101, 104 (2d Cir. 1991) (finding Title VII plaintiff who
favorably resolved case through settlement was entitled to attorneys' fees as the
prevailing party).

[2]     Part of Plaintiff's attorney fee application is sealed, pursuant to the terms of the
confidential settlement agreement reached by the parties and this Court's Order entered
December 2, 2015.  (Dkt. 124).  Accordingly, this Court has refrained from expressly
referencing the details of the results achieved on behalf of Plaintiff, although the Court
has considered those matters and factored them into its analysis of Plaintiff's fee
application.

and set a schedule for the submission of papers on the motion to re-open discovery. (Dkt. 131). Pursuant to that schedule, Defendants filed papers in opposition to the motion to re-open discovery (Dkt. 132), and also filed their own cross-motion to re-open discovery (Dkt. 133). Plaintiff filed papers in further support of her motion to re-open discovery (Dkt. 135), and papers in opposition to Defendants' cross-motion to re-open discovery (Dkt. 137). Finally, Defendants filed reply papers in support of their cross-motion. (Dkt. 138).

By Decision and Order filed April 18, 2016, this Court denied Plaintiff's motion to re-open discovery, and denied as moot the cross-motion to re-open discovery. (Dkt. 139). The Court also granted Plaintiff permission to file on or before May 2, 2016, any papers in further support of the fee application, and Defendants were allowed to file any further papers in opposition on or before May 13, 2016. (*Id.*). Plaintiff filed her papers on May 2, 2016 (Dkt. 140), and Defendants filed opposition papers on May 13, 2016 (Dkt. 141).

On May 17, 2016, a status conference was held, at which counsel for both parties confirmed that they did not believe an evidentiary hearing was required with respect to the pending fee application. Accordingly, the Court indicated that it reserved decision concerning the fee application.

## DISCUSSION

Title VII of the Civil Rights Act of 1964 authorizes a court, in its discretion, to award the reasonable attorneys' fees and expenses to a prevailing party. 42 U.S.C. § 2000e-5(k). To determine the amount of attorneys' fees, a court must calculate the

"presumptively reasonable fee," which the Second Circuit has instructed requires consideration of "the case-specific variables" to ascertain a reasonable hourly rate and the reasonable number of hours required by the case. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 190 (2d Cir. 2008). Here, Plaintiff as the prevailing party "bears the burden of 'establishing entitlement to an award and documenting the appropriate hours expended and hourly rates.'" *Glenn v. Fuji Grill Niagara Falls, LLC*, 14-CV-380S, 2016 WL 1557751, at *6 (W.D.N.Y. Apr. 18, 2016) (quoting *Savoie v. Merchants Bank*, 166 F.3d 456, 463 (2d Cir. 1999)).

A.   CALCULATION OF REASONABLE HOURLY RATES

According to Plaintiff's fee application, two separate law firms and a total of 12 different timekeepers worked on the case. Plaintiff sets forth the hourly rates of the various timekeepers involved in prosecuting the litigation on her behalf as follows:

| TIMEKEEPER | YEARS OF PRACTICE | HOURLY RATE |
|---|---|---|
| *Rates of Phillips Lytle LLP* | | |
| PARTNERS | | |
| Michael R. Law | 39 | $405 |
| Linda T. Prestegaard | 26 | $370 |
| James R. Grasso | 24 | $370 |
| Kelly W. Marks | 9 | $290 |
| Kevin J. Mulvehill | 9 | $290 |
| ASSOCIATES | | |

| | | |
|---|---|---|
| Chad W. Flansburg | 12 | $285 |
| Richard T. Tucker | 8 | $260 |
| Elizabeth Vanderlinde | 2 | $185 |
| PARALEGAL | | |
| Christine N. Reynolds | | $175 |
| *Rates of LaDuca Law Firm* | | |
| Anthony J. LaDuca | 21 | $300 |
| Luke B. Kalamas | Law School Graduate, Admission Pending | $150 |
| Sandie Mattle | Paralegal | $125 |

(Dkt. 123-1 at 4-5; Dkt. 123-9 at 3).

Plaintiff's counsel has not submitted any affidavits from attorneys within the community attesting to the reasonableness of the above hourly rates. Instead, Plaintiff's counsel attaches a *National Law Journal* billing survey from 2013 and a *New York Law Journal* article from June 2015, purportedly reporting the range of hourly rates of three law firms that are comparably sized to Phillips Lytle. (Dkt. 123-4; Dkt. 123-5).

As an initial matter, as discussed in Part B of this Decision and Order, the Court declines to award fees for the work performed by the individuals referenced above who were only peripherally involved in the case (Linda T. Prestegaard, James R. Grasso, Kelly E. Marks, and Richard T. Tucker). As a result, the Court will not consider the reasonableness of the hourly rates charged by those individuals, as any such consideration is unnecessary to the Court's analysis.

Defendants contend that the hourly rates sought by Plaintiff's counsel are unreasonable. Defendants argue that Mr. Law's hourly rate should be reduced to $300, Mr. Mulvehill's hourly rate should be reduced to $250, Mr. Flansburg's hourly rate should be reduced to $200, Mr. Kalamas' hourly rate should be reduced to $100, and that the paralegal hourly rates should be reduced to $75. (Dkt. 126 at 25).[3] Defendants do not request any reduction in the hourly rates charged by Mr. LaDuca or Ms. Vanderlinde. (*Id.*; Dkt. 126-2 at 44).

In calculating a presumptively reasonable fee, the Court must ascertain the "rate a paying client would be willing to pay." *Arbor Hill*, 522 F.3d at 190. That rate must account for, among others, the so-called *Johnson* factors, based upon the decision in *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 92-93 (1989). *Arbor Hill*, 522 F.3d at 190. Those variables include the following:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

---

[3]     Defendants also argue for a reduction in the hourly rates charged by other timekeepers reflected in Plaintiff's counsel's billing records. Again, however, because the Court will not be awarding any fees for the time incurred by these individuals, it has not expressly referenced Defendants' arguments about reducing those rates.

*Anello v. Anderson*, ___ F. Supp. 3d ___, 09-CV-715S, 2016 WL 3221863, at *11 (W.D.N.Y. June 10, 2016).   The Court "should also bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively.  The district court should also consider that such an individual might be able to negotiate with his or her attorneys, using their desire to obtain the reputational benefits that might accrue from being associated with the case." *Arbor Hill*, 522 F.3d at 190.

This Court considers all of those necessary variables in setting the reasonable hourly rates with respect to Plaintiff's counsel's fee application.   This case was not particularly complex.   It involved a single cause of action for retaliation in violation of Title VII.  Both law firms' retainer agreements were contingent in nature, providing for recovery of attorneys' fees in the amount of one-third of Plaintiff's recovery. (Dkt. 74-3; Dkt. 140-1 at 3).   Defendants argue that this means that under their contingent fee arrangements, Plaintiff's counsel would not have been entitled to recover more than about $130,000, since Plaintiff's maximum recovery under Title VII was $393,000.[4] (Dkt. 141 at 5).   However, the limits on a potential award should not necessarily restrict the fees sought by Plaintiff. *See Kassim v. City of Schenectady*, 415 F.3d 246, 252 (2d Cir. 2005) ("[W]e have repeatedly rejected the notion that a fee may be reduced merely because the fee would be disproportionate to the financial interest at stake in the litigation.").   Indeed, Plaintiff's counsel achieved a high degree of success on behalf of

---

[4]    Defendants' reasoning is based upon the $300,000 statutory cap under Title VII for an employer the size of Defendants, the $93,000 sought by Plaintiff in past wages, and the fact that Plaintiff dropped her claim for future wages during her closing argument at trial.

their client.  Moreover, while the legal issues were not particularly complex, the litigation was hotly contested and aggressively litigated by both sides.  Title VII places a statutory cap on the damages recoverable by a plaintiff, but its only restriction on the attorneys' fee to be paid to a prevailing party is that the amount must be reasonable.

The Court has considered the attorneys' customary hourly rates as reflected by their fee application.  The Court does not question that all of the attorneys involved in this case were skilled, nor does the Court question that the rates reflected in the fee application are charged by Plaintiff's counsel to paying clients.  However, according to the attorneys' own biographical information, with the exception of Mr. Mulvehill and Ms. Vanderlinde, none of Plaintiff's attorneys concentrated their practices in the area of labor and employment litigation.  Mr. Law's biography indicates that he concentrated his practice in the areas of "personal injury, product liability, toxic tort or industrial exposure, construction accidents, professional malpractice, insurance, contract and commercial law. . . ." (Dkt. 123-2 at 7).  Mr. Flansburg's biography indicates that he focuses "in the area of civil litigation with an emphasis on contractual disputes, real property, personal injury, products liability and collection enforcement.  He also focuses his practice on criminal defense matters." (*Id.* at 2).  Mr. LaDuca's "practice has mainly focused on personal injury matters." (Dkt. 123-10).

Moreover, while Mr. Mulvehill and Ms. Vanderlinde focus their practices in the area of labor and employment litigation, their biographies represent that they represent "public and private sector employers." (Dkt. 123-2 at 4, 17).  In other words, they do not typically represent plaintiffs in an employment discrimination context.  By no means

does this mean that they are not capable of doing so, but the fact is that their customary hourly rates are set with the representation of employers in mind, which necessarily involves consideration of different factors than a rate typically charged by an attorney representing a Title VII plaintiff.

In this District, the rates sought by Plaintiff's counsel are higher than the rates typically allowed for representation of a plaintiff in this context. Plaintiff's counsel has not cited any case from this District allowing hourly rates at the level they seek in a case of this nature.[5]

The hourly rates generally allowed in this District for a case such as this are in the range of $225-$250 for partner time or senior associate time, $150-$175 for junior associate time, and $75 for paralegal time. Indeed, while Defendants do not contest an award of $300 for senior partner time in this case, that rate is at the high end of what has typically been awarded in this District for similar types of cases. *See Anello*, 2016 WL 3221863, at *12 (applying rate of $225 per hour for partner, $150-175 per hour for associate, and $75 per hour for paralegal, in addition to hourly rates of $200-250 for trial counsel, in § 1983 action); *Glenn*, 2016 WL 1557751, at *7 (finding, in Title VII action, prevailing party entitled to attorneys' fees based upon hourly rate of $250 for senior

---

[5]     Plaintiff's reliance on cases from this District awarding higher hourly rates (Dkt. 123-15 at 15-16), is inapposite as the cases either dealt with instances where the reasonableness of the hourly rate was not challenged or they dealt with non-Title VII cases. In fact, Defendants also relied in their briefing on non-Title VII cases. (Dkt. 126 at 24). While not wholly irrelevant, and while the Court has not limited its consideration of case law from this District to only those involving Title VII claims, the most relevant authority are those cases dealing with reasonable hourly rates for plaintiff's attorneys in Title VII cases, or other similar employment discrimination or civil rights cases.

associate with 11 years' experience and $75 for paralegal, as rates were "in line with those rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation" (quotation omitted)); *Tyo v. Lakeshore Hockey Arena, Inc.*, No. 11-CV-6239-CJS-MWP, 2014 WL 2532447, at *3 (W.D.N.Y. June 5, 2014) (hourly rate of $250 reasonable for lawyers with 15 and 25 years' experience in labor and employment law); *Disabled Patriots of Am., Inc. v. Niagara Grp. Hotels, LLC*, 688 F. Supp. 2d 216, 226 (W.D.N.Y. 2010) (in Americans with Disabilities Act claim where plaintiff prevailed on summary judgment motion, reducing hourly rate of partner with more than 30 years of practice from $425 to $240, attorney with more than 20 years of practice from $350 to $200, and paralegal hourly rate to $75). *Cf. Peacock v. City of Rochester*, No. 6:13-cv-6046-MAT, 2016 WL 4150445, at *7 (W.D.N.Y. Aug. 5, 2016) (with exception for so-called "highly experienced attorneys," Court found $225 hourly rate for partners and $175 hourly rate for associates in line with rates awarded to attorneys with comparable experience in the District).

Based upon a consideration of all of these factors, as well as this Court's own knowledge and experience with the hourly rates in this community,[6] the Court sets the hourly rates as follows:

| ATTORNEY | YEARS OF PRACTICE | HOURLY RATE |
|---|---|---|
| Michael R. Law | 39 | $300 |

---

[6]      Up until December 30, 2013, the undersigned was in private practice in this community for over 20 years, and regularly litigated labor and employment matters, including Title VII actions.

| Anthony J. LaDuca | 21 | $300 |
| Kevin J. Mulvehill | 9 | $250 |
| Chad W. Flansburg | 12 | $250 |
| Elizabeth Vanderlinde | 2 | $185 |

In addition, the Court sets the rate of Mr. Kalamas at $100, *Brown v. Mustang Sally's Spirits & Grill, Inc.*, No. 12-CV-529S, 2013 WL 5295655, at *4 (W.D.N.Y. Sept. 18, 2013) (finding associate attorney rate not appropriate for work done prior to admission to practice law, thus reducing hourly rate to $100 pre-admission), and the paralegal rates at $75.

## B.   CALCULATION OF REASONABLE NUMBER OF HOURS

### Plaintiff's Fee Application

Here, as required, Plaintiff has submitted contemporaneous time records[7] "that specify, for each attorney, the date, the hours expended, and the nature of the work done." *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998). Plaintiff's counsel requests a total of $451,952 in attorneys' fees for legal services rendered by Phillips Lytle, reflecting a total of 1,549.40 hours of work on the case. (Dkt. 123-1 at ¶ 20). The hours worked by individual are broken down as follows:

---

[7]   Defendants argue that Mr. LaDuca did not keep contemporaneous time records for at least 50% of this litigation (Dkt. 126-1 at ¶ 9), thus implying that Mr. LaDuca's records are not legitimate. Mr. LaDuca states in a sworn declaration that he did maintain contemporaneous time records and that the records he has submitted are accurate. (Dkt. 140-3 at ¶¶ 40-43). Defendants did not request an evidentiary hearing on this issue, and the Court accepts Mr. LaDuca's sworn statements that the time records submitted were generated and maintained contemporaneously.

| TIMEKEEPER | HOURS | RATE | TOTAL FEES |
|---|---|---|---|
| Michael R. Law | 279.20 | $405 | $113,076 |
| Kevin J. Mulvehill | 544.10 | $290 | $157,789 |
| Chad W. Flansburg | 431.60 | $285 | $123,006 |
| Elizabeth Vanderlinde | 146.40 | $185 | $27,084 |
| Christine Reynolds | 107.40 | $175 | $18,795 |
| SUB-TOTAL | 1,508.70 | | $439,750 |
| Linda T. Prestegaard | 10.40 | $370 | $3,848 |
| James R. Grasso | .70 | $370 | $259 |
| Kelly W. Marks | 1.30 | $290 | $377 |
| Richard T. Tucker | 28.30 | $260 | $7,358 |
| SUB-TOTAL | 40.70 | | $11,842 |
| **TOTAL** | **1,549.40** | | **$451,592** |

With respect to the LaDuca Law Firm, Plaintiff requests fees in the amount of $301,243.75, as follows:

| TIMEKEEPER | HOURS | RATE | TOTAL FEES |
|---|---|---|---|
| Anthony J. LaDuca | 944.25 | $300 | $283,275 |
| Luke B. Kalamas | 112.50 | $150 | $16,875 |
| Sandie Mattle | 8.75 | $125 | $1,093.75 |
| **TOTAL** | **1,065.50** | | **$301,243.75** |

Thus, Plaintiff seeks a total of $752,835.75 in fees.[8]

*Defendants' Opposition*

In opposition to Plaintiff's fee application, Defendants analyzed the time records and submitted demonstrative exhibits in an effort to show that Plaintiff's fee request was excessive. (Dkt. 126-2).

Defendants point to the vagueness of many of Plaintiff's counsel's entries (Dkt. 141 at 7; Dkt. 126-2 at 28-30), where for example, on February 3, 2014, Mr. Law billed 3.4 hours for "drafting" and on October 13, 2015, Mr. Mulvehill billed 10.6 hours for "trial prep" with no further specification as to the actual tasks counsel was performing. According to Defendants' arguments, "a conservative estimate of the total time associated with Plaintiff's counsel's vague entries amounts to over 170 hours at a cost of approximately $58,595." (Dkt. 141 at 8; Dkt. 126-2 at 30).

Defendants also contend that the amount of time spent by Plaintiff's counsel on various aspects of the litigation was blatantly unreasonable, citing to the following: (1) 288.40 hours involving the motion practice before this Court with respect to Defendants' motion for summary judgment and the requests for sanctions, for a total of $97,868.00; (2) 584.50 hours working on discovery, for a total of $171,675.50; and (3) 1,056.20 hours on "trial preparation" for a total of $288,834.75 (Dkt. 126 at 8; Dkt. 126-2 at 2-3; Dkt. 140-3 at ¶ 18).

---

[8]    This amount does not include Plaintiff's supplemental fee application, which is addressed separately below.

Defendants also contend that Plaintiff's attorneys have inflated their billings and that their representations about the time incurred on various matters "are not to be believed." (Dkt. 126 at 9). Defendants cite to numerous instances that they believe demonstrate overinflated billings by Plaintiff's counsel. (*Id.* at 9-10). For example, Defendants cite to seven hours spent by Mr. LaDuca on notice to admit research, when the Notice to Admit served by Plaintiff's counsel contained only two admissions and was less than one-page in length. (*Id.* at 9; Dkt. 126-1 at ¶ 7; Dkt. 126-2 at 5-11). Mr. LaDuca responds that while the final work product may be limited, "many times final work product consists of days of struggle and moments of clairvoyance after collaboration between counsel." (Dkt. 140-3 at ¶ 9). Mr. LaDuca then describes the efforts that he undertook to draft the Notice to Admit. (*Id.* ¶¶ 9-12).

Another example cited by Defendants is 53 hours spent by Mr. Kalamas between October 16 and 23, 2015, on preparing an opening statement, the closing argument, and various direct and cross-examination testimony, when as a law school graduate not licensed to practice at the time of the trial, Mr. Kalamas did not perform any actual trial work. (Dkt. 126 at 10).

Defendants contend that the fee application reflects duplicative and unnecessary billing due to the excessive number of attorneys involved in the case, and Defendants cite to various examples wherein they contend these duplicative efforts occurred. (*Id.* at 13-14; Dkt. 126-2 at 12-20). Defendants argue that the duplicative time (where more than one attorney worked on the same task) amounts to 1,542.50 hours in the amount of $435,061.00. (Dkt. 126 at 14). Defendants also argue that many of the billing entries are

redundant, and contend that redundant entries (where two or more attorneys billed for the same event, such as a telephone conference with each other) amounts to 360.25 hours in the amount of $116,108.50.  (Dkt. 126 at 14; Dkt. 126-2 at 22-27).  Defendants also argue that Plaintiff's fee application contains numerous block billing entries, and a conservative estimate of the total time associated with these block billing entries amounts to over 460 hours at a cost of approximately $131,000.00.  (Dkt. 126 at 20-21; Dkt. 126-2 at 39-42).

Defendants argue that the fee request should be subjected to an across-the-board reduction of 70% (for a total dollar reduction of $525,985.03), or alternatively, if the Court considers each discrete attack, it should result in a total reduction of $589,196.00.  (Dkt. 126 at 26).  In other words, according to Defendants, Plaintiff's counsel should only be awarded fees in the neighborhood of $200,000.

*Analysis*

The law is clear that the Court need not engage in a line-by-line analysis of Plaintiff's fee application.  *Kirsch*, 148 F.3d at 173 ("Hours that are 'excessive, redundant, or otherwise unnecessary,' are to be excluded, . . . and in dealing with such surplusage, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed 'as a practical means of trimming fat from a fee application'. . . ." (citations omitted)).  It is neither realistic nor practical to expect a trial judge to evaluate and rule on every entry in a fee application.  *Walker v. Coughlin*, 909 F. Supp. 872, 881 (W.D.N.Y. 1995); *see Amato v. City of Saratoga Springs*, 991 F. Supp. 62, 66 (N.D.N.Y. 1998) ("[I]t is less important that judges attain exactitude, than that they use their experience with the case, as well as their experience with the practice of

law, to assess the reasonableness of the hours spent."); *see, e.g.*, *Anello*, 2016 WL 3221863, at *14 (applying 50% across-the-board reduction in hours to bring fee application "into the realm of reasonableness").

The Court agrees with many arguments raised by Defendants concerning the duplicative nature of Plaintiff's billing records.  While the litigation was hard fought and aggressively litigated by Defendants, the case simply did not warrant the number of attorneys involved in staffing this case on behalf of Plaintiff.  Mr. Law was initially involved in the litigation on behalf of Phillips Lytle, but as of April 2015, he ceased to actively practice. (Dkt. 123-1 at ¶ 25).  As a result, Mr. Flansburg and Mr. Mulvehill (who previously had some involvement in the case) were assigned as trial counsel by Phillips Lytle's litigation department group leader.  (*Id.*).  That resulted in three senior attorneys – all at high hourly rates – being involved in the trial of this case, along with paralegal and other timekeeper time.[9]

Moreover, while the Court agrees that the presentation of witness testimony was ultimately the critical factor in the successful resolution achieved by Plaintiff, and the preparation for that witness testimony was certainly important, there were only three days of trial testimony.  As a result, it is not reasonable that a total of approximately 1,500

---

[9]     The Court appreciates that Defendants were represented by three attorneys at trial and that defense counsel filed and litigated a significant number of issues.  Moreover, the Court has factored into its analysis the activities by defense counsel in aggressively defending their clients.  Nonetheless, the time and staffing by Plaintiff's counsel remain unreasonable, even when considering the effort expended by Defendants in defending the litigation.

hours were spent on trial preparation and the trial, at a total cost of over $400,000. (*See* Dkt. 126-2 at 2-3).

Similarly, expending almost 300 hours and $100,000 in attorneys' fees in connection with the summary judgment motion and related motion to compel and sanctions motion, was simply not warranted by the issues involved with that motion practice. Just by way of example, the Court's review of Plaintiff's billing records suggests that almost 40 hours was spent by three different attorneys with the Phillips Lytle firm preparing for oral argument of those motions.[10]  (Dkt. 123-6 at 13-14). That is not reasonable. The oral argument presented by counsel for both Plaintiff and Defendants lasted only approximately one hour, only one attorney from the Phillips Lytle firm appeared on behalf of Plaintiff at the oral argument, and the issues were not particularly complex.

As explained in *Anderson v. Rochester-Genesee Reg'l Transp. Auth.*, 388 F. Supp. 2d 159 (W.D.N.Y. 2005):

> In assessing whether an attorney's time was reasonably expended, the Court must ask whether the attorney exercised billing judgment. As the Supreme Court has explained, "[c]ounsel for the prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private

---

[10]     This estimate is based on the Court's review of the billing records for the time period after all motion papers had been submitted and prior to the oral argument. While in some instances the time entry is plainly related to oral argument preparation (*see, e.g.,* KJM2 Entry from 4/14/14 *"Prepare for oral argument"* (Dkt. 123-6 at 14)), in many other instances the time entry is too vague to definitively attribute it to oral argument preparation (*see, e.g.,* MRL Entry from 5/2/14 *"Research, review arguments"* (Dkt. 123-6 at 14)). Nonetheless, based on the timing of the work and the general, albeit vague, descriptions, the Court is able to estimate the number of hours devoted to oral argument preparation.

> practice ethically is obligated to exclude such hours from his fee
> submission.   In the private sector, billing judgment is an important
> component in fee setting.  It is no less important here.  Hours that are not
> properly billed to one's client also are not properly billed to one's adversary
> pursuant to statutory authority."

*Id.* at 163 (internal quotations omitted).

This Court recognizes that Plaintiff's counsel achieved a high degree of success on behalf of their client, and undoubtedly that success would not have been possible without the hard work and dedication that they devoted to this case.  Moreover, while Defendants cast various aspersions on the legitimacy of Plaintiff's counsel's records, this Court credits Plaintiff's counsel's representations that they incurred this time on behalf of their client.  However, the Court also recognizes that a timekeeper's pen may be more heavily weighted when recording time that will never end up on a bill being sent to a paying client.  The typical billing judgment restraints that an attorney employs when recording time related to work for a paying client often do not come into play when working on a contingent fee case.  This Court's review of Plaintiff's counsel's billing records suggests that they really have not exercised any type of billing judgment.

Plaintiff's counsel contends that they have not charged for certain time, and they have removed redundant time, (*see, e.g.,* Dkt. 123-1 at ¶ 27), but the Court does not agree.  Indeed, just by way of example, the fact that Plaintiff's counsel included time of about one hour for two separate attorneys with the Phillips Lytle firm who really had no involvement in the case (James Grasso and Kelly Marks), suggests to this Court that Plaintiff's counsel has done anything but exercise billing judgment.  As detailed in Defendants' analysis of the records, there are repeated redundancies and duplicative

efforts on the part of Plaintiff's counsel (*see* Dkt. 126-2 at 12-27), that simply would not be tolerated by a paying client. Indeed, while the Court understands that Mr. LaDuca felt he needed assistance in the handling of this matter, the Court questions whether the resources of two separate law firms were truly necessary. Moreover, as detailed in Defendants' submission, Plaintiff's counsel's time entries are replete with vague descriptions of the tasks performed. (*See* Dkt. 126-2 at 28-30). Any paying client would require further detail before agreeing to pay for such ambiguous services.

To be clear, the Court is not questioning the hard work by all of Plaintiff's counsel in connection this matter, nor is the Court underestimating the type of effort that must be expended to successfully litigate a Title VII case on behalf of a client. However, the Court also must be cognizant of the fact that even though Defendants must pay Plaintiff's reasonable attorneys' fees, they should not have to pay more than a client in this context would have been willing to pay.

Accordingly, the Court will not award any fees for the work of Mr. Grasso, Ms. Prestegaard, Ms. Marks, or Mr. Tucker, who were plainly only tangentially involved in the case, thus resulting in a total reduction of $11,842.00. Applying the reduced hourly rates discussed above to the hours expended by the remaining timekeepers, the Court calculates that the remaining fees being sought by Plaintiff as follows:

| TIMEKEEPER | HOURS | COURT-APPROVED RATE | TOTAL FEES |
|---|---|---|---|
| *PHILLIPS LYTLE* | | | |
| Michael R. Law | 279.20 | $300 | $83,760 |

| Kevin J. Mulvehill | 544.10 | $250 | $136,025 |
|---|---|---|---|
| Chad W. Flansburg | 431.60 | $250 | $107,900 |
| Elizabeth Vanderlinde | 146.40 | $185 | $27,084 |
| Christine Reynolds | 107.40 | $75 | $8,055 |
| SUB-TOTAL | 1,508.70 | | $362,824 |
| *LADUCA LAW FIRM* | | | |
| Anthony J. LaDuca | 944.25 | $300 | $283,275 |
| Luke B. Kalamas | 112.50 | $100 | $11,250 |
| Sandie Mattle | 8.75 | $75 | $656.25 |
| SUB-TOTAL | 1,065.50 | | $295,181.25 |
| **TOTAL** | **2,574.20** | | **$658,005.25** |

Considering this reduced fee application based upon all the factors set forth above, the Court determines that there should be an across-the-board reduction to the fee application of 40%. As a result, the Court finds that the reasonable attorneys' fees incurred on behalf of Plaintiff (excluding the supplemental fee application discussed below) are $394,803.15.

## C.   SUPPLEMENTAL FEE APPLICATION

After submitting her initial fee application, Plaintiff filed a request for additional fees in the total amount of $32,817 (total hours 114.60), with disbursements and costs of $25.00. (Dkt. 140). The bulk of the time reflected by this supplemental fee application

relates to Plaintiff's unsuccessful efforts to re-open discovery to obtain information concerning Defendants' attorneys' fees.   Defendants argue that over 60 hours of the 114.6 total hours appear to have been spent on that motion (Dkt. 141 at 8).

Plaintiff's supplemental fee application can be broken down as follows:

| INDIVIDUAL | HOURS | RATE | TOTAL FEES |
|---|---|---|---|
| Linda T. Prestegaard | 1 | $370 | $370 |
| Kevin J. Mulvehill | 14.2 | $290 | $4,118 |
| Chad W. Flansburg | 99.4 | $285 | $28,329 |
| **TOTAL** | **114.6** | | **$32,817** |

Plaintiff is plainly entitled to an award of attorneys' fees "'for time reasonably spent in preparing and defending' the fee application." *Balu v. City of New York*, 12 Civ. 1071 (KPF), 2016 WL 884666, at *9 (S.D.N.Y. March 8, 2016) (quoting *Weyant v. Okst*, 198 F.3d 311, 316 (2d Cir. 1999)); *see Anderson*, 388 F. Supp. 2d at 171 ("Prevailing parties are generally entitled to attorney's fees for work spent in preparing and defending a motion for attorney's fees."). However, as with the initial fee application, the Court declines to award fees for Ms. Prestegaard's work, and the Court reduces the hourly rates of Mr. Mulvehill and Mr. Flansburg to $250. This reduces the supplemental fee application to a request for $28,400.

Plaintiff's counsel's time reflected in the supplemental fee application, while still suffering from some elusiveness, contains more detail than the time reflected in the initial fee application. In the Court's view, this only further supports its conclusions concerning

the lack of billing judgment reflected in Plaintiff's counsel's initial fee application, because when Plaintiff's counsel recorded their time in the supplemental fee application, they were aware that the time would be submitted to the Court. Notwithstanding this further detail, the most fundamental problem with Plaintiff's supplemental fee application is that over 50% of the time was incurred litigating an unsuccessful (and in the Court's view, unnecessary) motion to re-open discovery. Taking that into account, along with the block billing and excessive nature of some of the time reflected in the supplemental fee application, the Court determines that there should be an across-the-board reduction of 60%. As a result, the Court finds that the reasonable attorneys' fees incurred on behalf of Plaintiff in the supplemental fee application are $11,360.

D.    COSTS

Phillips Lytle submits that the costs and disbursements it incurred on behalf of Plaintiff amounted to $2,615.38[11] (Dkt. 123-1 at 10; Dkt. 128-3; Dkt. 140-2), which primarily consist of duplicating at 10 cents a copy, ordering trial transcripts, private investigator costs, and messenger and subpoena service costs. Mr. Flansburg submits that the disbursements and costs were incurred by the firm and are the type normally charged to the firm's clients. (Dkt. 123-1 at 10).

The LaDuca Law Firm submits that the costs and disbursements it incurred on behalf of Plaintiff amounted to $29,277.58 (Dkt. 123-9 at 5). Of that amount, $6,279.38 reflected costs for transcripts, mediation costs, airfare for a witness who testified at trial,

---

[11]    This amount includes $25.00 included as part of the supplemental fee application. (Dkt. 140-2).

and related litigation costs. (Dkt. 123-13 at 2). An additional $480 reflects a bill from Colleen Tofolo-Allen for work related to wage calculations on behalf of Plaintiff. (Dkt. 123-13).

The remaining costs sought by the LaDuca Law Firm, and the vast majority of those costs, relates to work performed by Bradshaw Litigation Consulting LLC ("Bradshaw Consulting"), described as "a national consulting firm that offers a variety of services in preparation for a jury trial." (Dkt. 123-9 at 5). According to Mr. LaDuca, Bradshaw Consulting conducted empirical focus group research, assisted with jury selection, and helped with witness questioning and development at trial. (*Id.*). According to the invoice from Bradshaw Consulting, its costs reflected the airfare for two trips to Rochester ($1,018.20), and a total of 215 hours at the hourly rate of $100, for a total of $22,518.20.

Defendants do not launch specific challenges to the application for costs, and indeed, the Court finds that all the costs (with the exception of the Bradshaw Consulting costs) are reasonable and appropriate, and should be reimbursed.

With respect to the Bradshaw Consulting invoice, the hourly rate is certainly reasonable, but the time entries on the invoice itself suffer from many of the same defects as Plaintiff's attorneys' invoices. The time reflected on the Bradshaw Consulting invoice is a single sheet of paper accounting for a total of 215.43 hours, with no detailed description of the tasks performed. (Dkt. 123-13 at 4). Moreover, while the Court believes that Bradshaw Consulting added value to this case on behalf of Plaintiff, particularly since in the Court's estimation a different jury may very well have reached a

different result, it is nonetheless hard-pressed to justify the presence of Mr. Bradshaw throughout the entire trial. Based on a consideration of all of these factors, and the factors discussed in further detail above, the Court determines that the time reflected on the Bradshaw Consulting invoice should be similarly reduced by an across-the-board 40%, so that the total hours are reduced to 108 for a total cost of $10,800. With the addition of the airfare, this amounts to a total of $11,818.20 for the Bradshaw Consulting costs.

Adding the allowed costs for Bradshaw Consulting to the other costs and disbursements reflected by the invoices submitted by Phillips Lytle and the LaDuca Law Firm, the Court concludes that Plaintiff should recover a total of $20,174.76 in costs.

## CONCLUSION

For the foregoing reasons, it is hereby ordered that Plaintiff's Motion for Attorneys' Fees and Costs (Dkt. 123) is granted in part and denied in part. Plaintiff is hereby awarded a total of $406,163.15 in attorneys' fees and a total of $20,174.76 in costs and disbursements, for a total award of $426,337.91.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated: September 22, 2016
        Rochester, New York